No. 20611

CONSOLIDATED OIL & GAS, INC. v.
THE SUPERIOR OIL COMPANY.
(401 P.2d 89)

Decided April 19, 1965.

CALKINS, RODDEN & KRAMER, for plaintiff in error.

HASKELL, HELMICK, CARPENTER & EVANS, KENNETH R. OLDHAM, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MOORE.

WE will refer to plaintiff in error as defendant or Consolidated, and to defendant in error as plaintiff or Superior. Following a trial to the court, judgment was entered in favor of Superior in the sum of $2,800.00 plus interest and costs. Consolidated is here on writ of error seeking reversal of that judgment.

Superior held an Oil and Gas Mining Lease from the Jicarilla Apache Indian Tribe covering four sections of land in Rio Arriba county, New Mexico. This lease was procured in 1952 for a term of ten years and provided for payment of annual rental of $1.25 per acre, with a provision that the rental paid in any year might be credited against royalty in event production occurred.

On August 28, 1958, Superior entered into a farmout agreement with H. D. Hale, under the terms of which Hale was given certain drilling rights with respect to three and one-half sections of the leased land, and under which he agreed to drill an exploratory well to a specified depth at a location of his choice. It was further agreed that the exploratory well should be completed as a producer, or plugged and abandoned as a dry hole, within six months from August 28, 1958. Following the completion of the first well, Hale was to have the right or option to drill additional wells if he elected to do so. The farmout agreement gave to Hale successive rights to continue to drill under the terms of an operating agreement executed simultaneously with the farmout agreement.

The portions of the two agreements with which we are concerned on this review, are paragraphs 4 and 7 of the farmout agreement, and the first two paragraphs and Section 12 of the operating agreement. The pertinent provisions of the farmout agreement are as follows:

"4. *Upon completion of said well,* Operating Agreement in the form attached hereto as 'Exhibit B' executed concurrently herewith *shall govern and determine the respective rights and obligations of the parties hereto as to the leasehold estate,* limited however to the amount of acreage included within the drilling or spacing unit for the formation in which the well is completed or plugged and abandoned as a dry hole. You may continue to drill such additional well or wells as you may elect allowing no more than 90 days (amended to read 120 days on March 3, 1959) between completion or abandonment of one well and commencement of the next well, and thereby continue to earn additional rights under and pursuant to this Farmout Agreement as to spacing units under the same terms and conditions as are applicable to the drilling of the first well. *As said additional well or wells are completed as producers or dry holes, the leasehold estate as to the lands included within each respective*

*spacing unit shall be added to and governed by Operating Agreement marked 'Exhibit A.'* Said Operating Agreement shall govern the rights and obligations of the parties hereto on a per well or spacing unit basis." (Emphasis supplied.)

"7. After the effective date of this agreement and prior to the execution of Operating Agreement, this company shall pay as same become due, any and all rentals applicable to the lands subject hereto, which rentals shall be chargeable to your account, and you shall reimburse this company on demand for same. Upon execution of Operating Agreement provided for herein, all rentals shall be paid and be chargeable as provided in said Operating Agreement."

The farmout agreement was in the form of a typewritten letter written by Superior and approved by Hale. The operating apreement consists of a printed form furnished by Superior with typewritten insertions therein. The material portions thereof read as follows:

"This agreement is made and entered into effective as of August 28, 1958 by and between H. D. Hale (hereinafter called 'Operator') and the undersigned party or parties other than Operator (hereinafter sometimes called 'Non-Operators,' whether one or more).

"Section 1. EXHIBITS.

"(a) EXHIBIT A is a schedule showing the lands and leases held by Non-Operator which are made subject to this agreement. * * *"

"Section 12. PAYMENT OF LEASE RENTALS.

"Lease rentals shall be paid as follows: By Non-Operator and charged to the joint account as to all of the lands covered by Farmout Agreement of August 28, 1958 between the parties hereto."

Consolidated took over all the rights and assumed all the obligations of Hale in the two agreements, and did complete the first well. In the meantime Superior paid lease rentals in the sum of $2,800.00 which it charged to Consolidated in accordance with the farmout agreement.

If the farmout agreement is controlling then Consolidated, as the assignee of Hale, must reimburse Superior for the amount paid. If the operating agreement obtains, then the rentals paid by Superior must be charged to a joint account.

The trial court found as follows:

"That the plaintiff entered into a farmout agreement with one H. D. Hale on August 28, 1958; that the defendant company assumed the rights and obligations of H. D. Hale as to the land in question on March 20, 1959; that the plaintiff paid the annual rent on said land for the period from April 8, 1959 to April 8, 1960, which annual rent for the land in question amounted to $2,800; that the defendant company completed the drilling of a well on said land in July, 1959, and abandoned it as a dry hole.

"The Court concludes as a matter of law that the operating agreement, which is designated as Exhibit D, would not become effective until a producing well was obtained.

"IT IS THE JUDGMENT AND DECREE OF THIS COURT that the plaintiff have judgment against the defendant in the sum of $2,800 plus interest in the sum of $591.53 and costs. * * *"

██ The one point relied on for reversal is that the trial court erred in declaring as a matter of law that the operating agreement could not become effective until a producing well was obtained. Assuming arguendo that defendant is technically correct in that statement, it amounts to no more than an erroneous reason for a correct finding. In the instant case, when defendant finished or completed the only well which was drilled under the farmout agreement it elected to abandon and to proceed no further with its rights to drill. The emphasized portions of the farmout agreement, which we have quoted above, fixes the time when the operating agreement shall govern. Its terms become controlling "upon completion of said well."

The facts are undisputed that the payments of rental by Superior were made before any well was ever completed. Under the terms of the farmout agreement Superior was entitled to reimbursement for the amount paid. Whether the one well was a producer or a dry hole could make no difference. The operating agreement as it pertained to rentals could not come into effect until defendant elected to drill at least one other well. If the farmout contract and the operating agreement are treated as one contract, the result is the same.

"* * * It is presumed that each part of the contract has a purpose, and a construction which gives legal effect to every part thereof will be adopted." *Carleno Sales v. Ramsay Co.,* 129 Colo. 393, 270 P.2d 755.

For the foregoing reasons the judgment of the trial court was correct. It matters not that the trial court arrived at its conclusion on an erroneous premise. Where proper grounds are shown to exist, which would compel the entry of the judgment, the fact that the trial court assigned an erroneous or insufficient reason for its conclusion does not warrant a reversal. In *Graham v. Swift,* 123 Colo. 309, 228 P.2d 969, we find the following pertinent language:

"* * * The reason assigned by the trial court may in itself be insufficient to warrant the judgment, but if upon other grounds the judgment is correct, it will not be reversed because of faulty reasoning."

To like effect is *Lawyers Title Insurance Corp. v. Frieder,* 147 Colo. 44, 362 P.2d 555.

The judgment is affirmed.

MR. JUSTICE SUTTON and MR. JUSTICE FRANTZ concur.